UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT W. SHAVER,

                              Plaintiff,

         v.                                              **DECISION AND ORDER**
                                                              06-CV-114S
JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

         1.      In this action, Plaintiff seeks reversal of Defendant's final decision denying

his applications for disability insurance benefits ("DIB") and supplemental security income

("SSI"), as provided in Titles II and XVI, respectively, of the Social Security Act.   The

Administrative Law Judge ("ALJ") found that Plaintiff is not disabled because he retains the

residual functional capacity to perform light work.   This Court has jurisdiction to review

Defendant's final decision under 42 U.S.C. § 405(g).

         2.      Plaintiff applied for DIB and SSI on August 26, 2002, and his claims were

initially denied (Tr. 35-40).[1]  Plaintiff then requested a hearing, which was held on August

3, 2004 (Tr. 41, 43, 315-42).   At the hearing, the ALJ heard testimony from Plaintiff and

Plaintiff's mother.  On September 11, 2004, after considering the matter *de novo*, the ALJ

found that Plaintiff was not disabled during the period relevant to his applications (Tr. 17-

26).   The ALJ's decision became Defendant's final decision when the Appeals Council

denied Plaintiff's request for review on December 27, 2005 (Tr. 5-7).  Plaintiff subsequently

---

[1] "Tr." citations are to the correspondingly numbered pages in the certified administrative record
filed with Defendant's Answer.

brought this action in the United States District Court, Western District of New York, seeking review of Defendant's final decision.

3.      Defendant filed a Motion for Judgment on the Pleadings on September 27, 2006.  Plaintiff filed a Cross-Motion for Summary Judgment on November 13, 2006. Defendant filed a Reply Memorandum of Law on November 27, 2006.  This Court took the matter under advisement without oral argument.  For the following reasons, Defendant's motion is granted, and Plaintiff's motion is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3);  Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen,

2

859 F.2d 255, 258 (2d Cir. 1988).    If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."    Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the

[Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.    In this case, the ALJ made the following findings with regard to the five-step process set forth above. First, Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (Tr. at 24). Second, Plaintiff had a combination of severe impairments (Tr. at 24). Third, after determining that Plaintiff's severe impairments included depression, anxiety, posttraumatic stress syndrome, and surgical pins in his right knee, the ALJ determined that Plaintiff's severe impairments did not meet or equal a listing in Appendix 1 (Tr. 19, 25). Fourth, the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 25). The ALJ determined that Plaintiff retained the residual functional capacity to perform a significant range of light work (Tr. at 25). Fifth, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy (Tr. at 25). Finally, the ALJ determined that Plaintiff was not under a disability

at any time through the date of his decision (Tr. at 25).

10.    Plaintiff's first challenge to the ALJ's decision is that he failed to properly apply the treating physician's rule[2] to two of Plaintiff's treating doctors (Haddad and Coluruss) who opined that Plaintiff was disabled from work and "markedly disabled from performing physical activity or labor-intensive work."  (Tr. at 187, 188, 215.)  These notations, however, do not constitute medical opinions that are entitled to enhanced weight under the treating physician's rule.  It is well settled that the disability determination is reserved to the Commissioner, not a treating physician.  See 20 C.F.R. § 404.1527 (conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act).  Consequently, the ALJ is not required to accept a physician's conclusion that an individual is disabled.

11.    Plaintiff next argues that the ALJ erred by finding that he was not a credible witness.  Credibility determinations are generally reserved to the Commissioner, not the reviewing court.  Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar).  The ALJ is required to set forth the essential considerations upon which his or her decision is based, with sufficient particularity to enable the reviewing court to decide whether the disability determination was supported by substantial evidence.  See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)

---

[2] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . .  mention[ ] every item of testimony presented to him or . . . explain[ ] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); see also Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (holding that the court was unwilling to require the ALJ to explicitly reconcile every conflicting shred of evidence provided that he carefully considered the evidence in reaching his decision).

In this Court's view, the ALJ's decision contains an adequate discussion of why he found Plaintiff's testimony to be less than credible.  First, the ALJ found a portion of Plaintiff's testimony to be inconsistent with the medical evidence.  (Tr. at 21.)  Plaintiff testified that he was not using any type of drugs from February 2001 through March 2004, and had not had any alcohol from January 2002 until March 2004.  But the medical reports and toxicology results proved otherwise (Tr. 142, 143, 186, 191, 192, 203, 273).  Second, the ALJ found that Plaintiff's refusal to attend Alcoholics Anonymous meetings and failure to consistently comply with his medical treatments reflected poorly on his credibility.  (Tr. at 21.)  Evidence in the record demonstrates that Plaintiff has a history of noncompliance with medical treatments.  For example, he self-medicated with unprescribed medications obtained from his mother  (Tr. 144), and failed to attend physical therapy sessions (Tr. 173).

Plaintiff further contends that portions of the hearing transcript are noted as "inaudible," and therefore it is impossible to fairly determine whether the ALJ's credibility determination is supported by substantial evidence.  Although several portions of the transcript contain "inaudible" notations, it does not prevent this Court from making a fair

determination.  Having reviewed the entire record, this Court finds that the ALJ sufficiently articulated his rationale for concluding that Plaintiff's testimony was not totally credible. Moreover, the ALJ's determination in this regard is supported by substantial evidence in the record.

12.    Plaintiff's third argument is that the ALJ failed to consider the combined effect of his exertional and non-exertional impairments.  This Court has already upheld the ALJ's credibility determination, which undermined Plaintiff's subjective complaints.  Moreover, this Court is satisfied from its review of the ALJ's total decision that he carefully considered each of Plaintiff's impairments, both separately and in combination, in arriving at his decision (Tr. 19, 23).

13.    Plaintiff's final argument is that the ALJ erroneously used the vocational guidelines to conclude that Plaintiff could perform gainful work available in the economy. Defendant has the burden of establishing that Plaintiff is independently capable of performing work.  See Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)("once the claimant has established a prima facie case by proving that his impairment prevents his return to his prior employment, it then becomes incumbent upon the [Commissioner] to show that there exists alternative substantial gainful work in the national economy which the claimant could perform").

In the ordinary case, this burden is satisfied by resorting to the applicable medical vocational guidelines, also known as "the Grids."  See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  But if a claimant's non-exertional impairments *significantly* impact his ability to perform work, then the Grids in all likelihood will not accurately determine disability status because they fail to take into account the claimant's non-exertional impairments.

See id. at 605; Cangelosi v. Chater, No. 94-CV-2694, 1996 WL 663161, *5 (E.D.N.Y. Nov. 5, 1996) ("applicability of the Grids should be determined on case-by-case basis").  Where it is established that a claimant's non-exertional limitations are significant, "the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  Bapp, 802 F.2d at 603.

In this case, a vocational expert was not required because the ALJ found that Plaintiff's non-exertional limitations were not significant.  The ALJ found that Plaintiff's documented mental limitations do not result in deficits that would preclude her from performing competitive, remunerative, unskilled work (Tr. 23).  Consequently, the ALJ did not err by applying the Guidelines in place of a vocation expert.  See Bapp, 802 F.2d at 603 (vocational expert or other similar evidence is only required if non-exertional limitations "significantly" diminish claimant's ability to perform work )

14.    After carefully examining the administrative record, this Court finds that substantial evidence supports Defendant's final decision in this case.  Specifically, the medical evidence and opinions contained in the record, in conjunction with Plaintiff's testimony, support the determination that Plaintiff is not disabled within the meaning of the Social Security Act.  This Court finds no reversible error in the Commissioner's overall weighing of the evidence or in his credibility determination, and finds that substantial evidence of record supports his decision.  Accordingly, Defendant's Motion for Judgment on the Pleadings is granted, and Plaintiff's Cross-Motion for Summary Judgment is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Cross-Motion for Summary Judgment (Docket No. 14) is

DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated:   September 21, 2007
         Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge